UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In Re

JASON SESSIONS Case No. 05-17647-MAM-13

Debtor

**ORDER DENYING CONFIRMATION OF PLAN AS FILED AND SUSTAINING OBJECTIONS OF AMSOUTH BANK AND FORD MOTOR CREDIT COMPANY AND THE CHAPTER 13 TRUSTEE**

Stephen L. Klimjack, Attorney for the Debtor, Mobile, AL
Geoffrey Alexander, Attorney for Ford Motor Credit Company, Mobile, AL
Gregory Combs, Attorney for AmSouth Bank, Mobile, AL
J.C. McAleer, Chapter 13 Trustee, Mobile, AL

This case is before the court for confirmation of the debtor's chapter 13 plan. This court has jurisdiction to hear these issues pursuant to 28 U.S.C. § § 157 and 1334 and the Order of Reference of the District Court. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court has the authority to enter a final order. For the reasons below, the court is denying confirmation of the debtor's plan as presently proposed.

FACTS

Jason Sessions filed this chapter 13 bankruptcy case on December 12, 2005. He owns two vehicles--a 2004 Lincoln Town Car and a 2004 Ford F-150 truck.

AmSouth and the debtor stipulated that the car was purchased within 910 days before the bankruptcy filing. The car loan payoff balance is $38,091.11. The NADA retail value of the car is $23,500.00. The contract rate on the note is 6.05%. The AmSouth loan is secured by a purchase money security interest and the car is for the personal use of the debtor.

Ford Motor Credit Company and the debtor stipulated that the truck was purchased within 910 days before the bankruptcy filing. The vehicle loan is secured by a purchase money security interest in the truck. The truck is used by the debtor personally. The payoff balance of the loan is $34,203.39. The retail value of the truck, according to the NADA book, is $24,775.00. The interest rate on the loan is 4.9%.

The debtor treated the vehicles in his plan as follows:

AmSouth is to be paid $494 per month on a collateral value of $22,800 at 9% interest.

Ford Motor Credit is to be paid $487.32 per month on a collateral value of $22,550 at 9% interest.

The plan also provides that debtor's counsel will be paid $3,000. The sum of $2,160 will be paid in the first distribution under the plan and the remaining $540 would be paid over the next few months after payment of administrative expenses and domestic support obligations (of which it appears there are none).

AmSouth Bank and Ford Motor Credit Company object to their treatment under the plan because the amount to be paid on their secured claims is less than the full amount owed.[1] The Chapter 13 Trustee objects to the plan because the payments to debtor's counsel violate Local General Order No. 17.

LAW

---

[1] The debtor and creditors indicated to the Court that there was also an issue as to whether the case of *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed. 2d 787 (2004) applied to post-BAPCPA cases such as this one. However, the debtor provided a *Till* interest rate using the formula approach to the secured claims and both secured creditor attorneys indicated that they accepted the *Till* rate. Therefore, there is no *Till* issue for the Court to decide in this case.

The court will address the secured creditors' issue first and then turn to the Trustee's issue.

A.

11 U.S.C. 1325(a)(5) requires a debtor to provide treatment of "allowed secured claims" in one of three ways:

> (5) with respect to each allowed secured claim provided for by the plan—
> (A) the holder of such claim has accepted the plan;
> (B)(i) the plan provides that—
> (I) the holder of such claim retain the lien securing such claim until the earlier of—
> (aa) the payment of the underlying debt determined under nonbankruptcy law; or
> (bb) discharge under section 1328; and
> (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
> (iii) if—
> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
> (c) the debtor surrenders the property securing such claim to such holder.

In this case the debtor is proceeding under § 1325(a)(5)(B). There is no objection as to how Mr. Sessions is fulfilling § 1325(a)(5)(B)(i) or (iii). The issue is whether the treatment of the claims fulfills the requirement of § 1325(a)(5)(B)(ii). Sessions is proposing to pay to the two secured creditors an amount less than the full payoff balance of their loans. Is this treatment paying the creditors "value . . . [that is] not less than the allowed amount of . . .[their allowed secured] claim[s]?" Mr. Sessions has not objected to either AmSouth's or Ford Motor Credit's claims so

the claims are deemed allowed under 11 U.S.C. § 502(a). The question is what is the secured claim of each creditor. Sessions proposes to pay the actual retail value of the vehicles which is less than the net loan balances. The creditors claim that under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) their secured claims are the full loan payoff amounts regardless of the actual value of the vehicles.

BAPCPA contains an unnumbered provision that is positioned after § 1325(a)(9) ("the hanging paragraph") which states:

> For purposes of paragraph [1325(a)](5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day (sic) preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . .acquired for the personal use of the debtor.

This hanging paragraph is the basis of the objection of the motor vehicle creditors in this case. As holders of purchase money security interests acquired within 910 days before bankruptcy on vehicles used personally by the debtor ("910 claims"), the creditors are correct that the hanging paragraph applies to them.

Section 506 of the Bankruptcy Code is titled "Determination of secured status." It provides, in part, that allowed secured claims may be bifurcated into two parts, a secured and unsecured claim, depending upon the value of the property. If § 506(a) applied to AmSouth and Ford Motor Credit's debts, the debtor's treatment of the claims would be appropriate because, based on the value of the vehicles, part of each claim is secured and part is unsecured. However, the hanging paragraph states that § 506 does not apply, so where does the court go for guidance on how to treat the claims?

The debtor makes several arguments. First, if Congress wanted to prevent modification of 910 claims, it could have said so. It did not. It just stated that § 506 does not apply to 910 claims. Second, if § 506 does not apply, that means that the claims are fully unsecured. Section 506 is the only section of the Bankruptcy Code that establishes or determines the extent of a creditor's status as secured. If that cannot be established under § 506, then the claim must be unsecured. Third, if the claim is unsecured the debtor need not comply with § 1325(a)(5) in treating the claim in the plan. The debtor only needs to meet a good faith test because, even if the vehicle loans are unsecured, the debtor must propose a plan in good faith. 11 U.S.C. § 1325(a)(3). The treatment of the vehicle loans as proposed is in good faith.

AmSouth and Ford Motor Credit argue that the debtor has essentially proposed a "cramdown" plan allowed under the pre-BAPCPA Bankruptcy Code. If that were what Congress intended, what was the point of adding the hanging paragraph to the Code? The creditors also argued that § 506 allows a secured claim on personal property in a chapter 13 case (not a 910 claim) to be valued at replacement value. 11 U.S.C. § 506(a)(2). If this is not to apply to 910 claims, what is left for 910 claims is allowance at full loan balance.

The debtor's reasoning is, in part, the basis for the recent decision of *In re Carver*, 2006 WL 563321 (Bankr. S.D. Ga. 2006). In that case the court found that "[t]he method established by Congress for creating a 'secured claim' has been and continues to be found in § 506 (a) of the Code. While it is the prerogative of Congress to establish certain types of claims as 'secured claims' apart from § 506 (a), such a provision must specify that result clearly." *Id.* at *2. The court further stated: "The only generally applicable definition of a secured claim comes from § 506. By rendering that section inapplicable to 910 claims, Congress expressly eliminated the

mechanism by which they could be treated as secured under the Chapter 13 plan." *Id*. at *3. The case further discusses the legislative history of BAPCPA and finds that an earlier unenacted version of the law did include language in § 506 that would have determined 910 vehicle claims were secured to the full extent of the loan payoff balance, but that provision was left out of the final version of the law. Therefore, Judge James Walker in the *Carver* case concluded that 910 claims were unsecured.

The case of *In re Johnson*, 337 B.R. 269 (Bankr. M.D.N.C. 2006), holds that all the hanging paragraph does is prevent bifurcation of a 910 creditor's claim. "Such a creditor is entitled to the full payment of his contractual claim or the return of the vehicle." *Id*. at 272. Several other cases assume without discussion that the hanging paragraph only precludes bifurcation. *In re Robinson*, 2006 WL 349801 (Bankr. W.D. Mo. 2006); *In re Horn*, 2006 WL 416314 (Bankr. M.D. Ala. 2006).

This court concludes that the claims of the secured creditors cannot be bifurcated. Section 506 (a) of the Bankruptcy Code does not apply. With all due respect to Judge Walker's view that any claim not treated under § 506 must be unsecured, this Court concludes that the removal of 910 claims from treatment under § 506 means that the Court must look to other places in the Bankruptcy Code or other law to determine how to treat 910 claims. This Court holds that the proper place to look for treatment of the claims is state law since no other Bankruptcy Code section states how 910 claims are to be treated. The doctrine of preemption precludes looking to state law when the Bankruptcy Code has fully occupied the field. Preemption occurs "where Congress has made a comprehensive scheme of regulation." *In re Nation*, 236 B.R. 150, 154 (Bankr. S.D.N.Y. 1999). Preemption precludes consideration of other

law "where Congress has left no room to supplement" the law. *Pacific Gas and Electric Co. v. State Energy Resources Conservation and Dev. Comm'n.*, 461 U.S. 190, 204, 103 S.Ct. 1713, 75 L.Ed.2e 752 (1983). Finally preemption "occurs where federal and state law conflict, making compliance with both an impossibility, or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *In re Nation,* 236 B.R. 150, 154 (Bankr. S.D.N.Y. 1999) (quoting *Pacific Gas and Elec. Co. v. State Energy Resources Conservation and Dev. Comm'n*, 461 U.S. 190, 204, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983)). In this case, the Bankruptcy Code does not clearly occupy the field; in fact, it has abdicated the field. The hanging paragraph takes 910 claims out of the Code's own scheme of treatment. Therefore, the Court should look to law that would apply in the absence of Code coverage. *Butner v. U.S.*, 440 U.S. 48, 99 S. Ct. 914, 59 L.Ed.2d 136 (1979): *Raleigh v. Ill. Dep't. of Revenue*, 530 U.S. 15,19, 120 S.Ct. 1951, 1954, 147 L.Ed.2d 13 (2000) (stating that "creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code"); *Greenfield v. BFP Investments, Ltd. ( In re BFP Investments, Ltd.)*, 149 Fed. Appx 828, 830 (11th Cir. 2005); *Musolino v. Sinnreich (In re Sinnreich)*, 391 F.3d 1295, 1297 (11th Cir. 2004). The U.S. Supreme Court also stated that "[t]he justifications for application of state law are not limited to ownership interests, . . .[but] apply with equal force to security interests." *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). *See also Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). The applicable law would be Alabama state law unless it directly conflicts with the Code.

Alabama lien law recognizes a vehicle lender's claim to its full extent as a secured claim

until the secured claim is paid or the vehicle is surrendered or repossessed and sold. Ala. Code § 7-9A-101 et seq. (1975). Therefore, AmSouth and Ford Motor Credit's claims are treated as fully secured claims until disposition after default and repossession or surrender. Ala. Code § 7-9A-610, 615 (1975). Only at the time of sale of the collateral is any unsecured deficiency liability created or recognized. *Id*.

This result is consistent with the intent of the drafters of BAPCPA. The legislative history states that the hanging paragraph contains a "prohibition against bifurcating a secured debt incurred within the 910-day period preceding the bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use." H. R. Rep. 109-31(I), pt.1, at *17 (April 8, 2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 103. The result of using Alabama law does not conflict with other provisions of the Code. Therefore, Sessions' plan must provide for the full payoff balance of AmSouth Bank's and Ford Motor Credit Company's loans.

B.

The Trustee seeks guidance as to whether to apply Local General Order No. 17 to the timing of payments to debtor's counsel in this case. Local General Order No. 17 states that "[t]he Chapter 13 Trustee shall pay, if funds are available, 50% of the attorney's fee on the first distribution, with the balance paid over the next five months in equal installments of 10% each." This Order became effective September 1, 1999. Debtor's counsel seeks to have approximately 72% of his fee paid in the first distribution and the remaining 28% within several months thereafter. The Court concludes that it is not appropriate to rescind or overrule Local General Order No. 17 at this time. Fees have been raised from $1,800 to $3,000 in the average case due

to evidence presented to the Court of the additional work necessary under BAPCPA. However, in considering the increase, the Court took into account that the debtor's attorney is not paid immediately, but must wait for some of his or her fee. The Court believes the present system is fair to all parties. The debtor's lawyer, who has invested a substantial amount of time in preparing and filing the initial papers, attending a meeting of creditors, attending a confirmation hearing, and doing all of the other early case tasks deserves to receive some of his or her fee early in the case. However, the debtor's lawyer's rights must be balanced against those of all of the other claimants in the case. Also, having the fee paid over time is an incentive for the debtor's attorney to insure that the case is a viable one--at least for the critical first year after filing. For all of these reasons, the Court concludes that Local General Order No. 17 remains in effect. Debtor must revise his plan so that the fee request is in line with the order.

IT IS ORDERED that the objections of AmSouth Bank, Ford Motor Credit Company, and the Chapter 13 Trustee to the amended chapter 13 plan of Jason Sessions are SUSTAINED and the debtor shall file a further amended plan within 20 days of the entry of this order.

Dated: March 13, 2006

Margaret A. Mahoney
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE